United States District Court
Southern District of Texas
**ENTERED**
December 06, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| **JUAN CARLOS SALAZAR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:16-cv-00292** |
| | § | |
| **ZAPATA COUNTY, *et al.,*** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## REPORT AND RECOMMENDATION

Before the Court are Defendant Ramos' [sic] Motion to Dismiss (Dkt. No. 81), Defendant Ramos' [sic] Opposed Motion to Strike Plaintiff's Second Amended Complaint and Brief in Support (Dkt. No. 86), and Plaintiff's Omnibus Motion for Leave to Amend and Response to Defendant Ramos's Motions to Dismiss and to Strike (Dkt. No. 87). On September 27, 2018, the District Court referred the Motion to Dismiss to the undersigned for findings of fact, conclusions of law, and a recommended disposition. On October 26, 2018, the Court held a hearing on Defendant's Motion to Dismiss, following which the Court ordered the parties to file additional briefing on Defendant's Motion. (Dkt. No. 129). The parties filed their advisories on November 2, 2018. (Dkt. Nos. 131, 133). For the reasons set forth below, the Court will recommend that the District Court GRANT Defendant's Motion to Dismiss (Dkt. No. 81) and Motion to Strike Plaintiff's Second Amended Complaint (Dkt. No. 86), and DENY Plaintiff's Motion for Leave to Amend (Dkt. No. 87).

### I.    Introduction

This action was brought under 42 U.S.C. § 1983 by Plaintiff Juan Carlos Salazar for injuries he allegedly suffered in the March 1, 2014 tasing by a Zapata County Sheriff's Deputy.

Defendant Ramos, whose motion is before the court, was witness to the tasing, and Plaintiff asserts a § 1983 claim for bystander liability against him. Defendant Ramos now moves to dismiss this suit against him as time-barred. In the alternative, Defendant Ramos argues that the claim is barred by the Eleventh Amendment.

## II.      Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In considering a Rule 12(b)(6) motion, the Court must accept the nonmovant's factual allegations as true, but labels and conclusions, formulaic recitations of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not suffice. *Id.* When an amended pleading is introduced while a motion to dismiss is pending, a court has discretion to consider the motion as if it were addressed to the amended pleading. *Thomas v. Miramar Lakes Homeowners Ass'n*, No. 4:13-CV-1479, 2014 WL 3897809, at *4 (S.D. Tex. Aug. 6, 2014). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### III.     Background

On December 11, 2015, Plaintiff filed this suit, pro se, under 42 U.S.C. §1983 against

"Zapata County Texas," the "Sheriff of Zapata County," and "Deputies of Zapata County." (Dkt.

No. 1).  In the body of his Original Complaint—written on a standardized form for prisoners filing

§1983 suits—Plaintiff described the defendants he was bringing suit against, as follows:

B.  Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1:  *Sheriff of Zapata County Texas on March 1, 2014.*

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

*Erased the Video of deputy who Tased me.*

Defendant #2:  *Unknown Deputy sheriff of Zapata County, Tx. Deputy Tased me without Cause while I Lay Face down on Street.*

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

*Stated Above*

Defendant #3:  *Other Unknown Deputies of Zapata County Texas on Scene at the Time I was Tased*

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

*Allowed the illegal Act without Taking Action*

On January 8, 2016, the Court entered an Order for More Definite Statement directing

Plaintiff to submit written responses to twenty-five Court-authored questions. (Dkt. No. 5).

Plaintiff filed his More Definite Statement on February 5, 2016. (Dkt. No. 9). Plaintiff does not

name Ramos as a Defendant until March 13, 2018, in his First Amended Complaint, filed with

leave of Court. (Dkt. No. 71). On May 31, 2018, Ramos filed a motion to dismiss the claims against

him. (Dkt. No. 81). In response to the challenges raised in Ramos's motion, Plaintiff filed his

Second Amended Complaint to add facts that would support his argument that Defendants Ramos

and Zapata County Sheriff's Office share an "identity of interest." (Dkt. No. 85). On June 5, 2018,

Defendant moved to strike the Second Amended Complaint. (Dkt. No. 85). On June 14, 2018,

Plaintiff filed his Omnibus Motion for Leave to Amend and Response to Defendant Ramos's Motions to Dismiss and to Strike. (Dkt. No. 87).

### IV.   Discussion and Conclusions of Law

### 1.   The Motion to Dismiss

#### A.  Statute of Limitations

The statute of limitations period for a §1983 claim is "determined by the general statute of limitations governing personal injuries in the forum state…. Texas has a two year statute of limitations for personal injury claims." *Balle v. Nueces Cty., Texas*, 690 F. App'x 847, 849 (5th Cir. 2017) (citations omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). At the October 26, 2018 hearing, the parties stipulated that Plaintiff's cause of action against Defendant Ramos accrued on March 1, 2014, and that the applicable statute of limitations is two years. Accordingly, the applicable statute of limitations expired on Plaintiff's claims on March 1, 2016.

Plaintiff filed his lawsuit against various defendants on December 11, 2015, within the limitations period, but he did not name Ramos as a defendant until he filed his First Amended Complaint on March 13, 2018, more than two years after the statute of limitations had expired. Plaintiff therefore argues that his claim against Ramos is not barred because the First Amended Complaint relates back to either his original complaint or his more definite statement. (Dkt. No. 87 at 2). In the alternative, he argues that the statute of limitations period should have been equitably tolled.

#### B.  Relation Back

Relation back is governed by FRCP 15. Rule 15 states, in relevant part:

**Rule 15. Amended and Supplemental Pleadings**
**(c) Relation Back of Amendments.**
    **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:

**(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15. Rule 15 creates three situations in which an amendment to a pleading will relate back to the date of the original pleading. First, under 15(c)(1)(A), an amendment relates back when "the law that provides the applicable statute of limitations allows relation back." In *Balle v. Nueces Cty, Texas*, 690 F. App'x 847, 850 (5th Cir. 2017), the Fifth Circuit concluded that the law governing the statute of limitations in a § 1983 claim arising in Texas does not relate back within the meaning of this subsection. Here, as in *Balle*, the Court concludes that Texas law does not allow relation back within the meaning of Rule15(c)(1)(A).

Second, under 15(c)(1)(B), an amendment relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." When relation back is invoked to change the name of a misidentified party, a 15(c)(1)(B) relation-back analysis is subsumed by 15(c)(1)(C), Rule 15's third path to relation back. In other words, if an amendment seeks to change the naming of a party, rather than merely adding a claim arising from the occurrence at issue in the original complaint, 15(c)(1)(B) is insufficient to permit relation back; and if there is no law to permit relation back under 15(c)(1)(A), the claim to be added against the newly named party will be barred unless all

the elements provided by 15(c)(1)(C) are satisfied. Since Plaintiff seeks to change the naming of the party, 15(c)(1)(B) is also inapposite.

Third, under 15(c)(1)(C), an amendment relates back when "the amendment changes the party or the naming of the party against whom a claim is asserted," if (1) Rule 15(c)(1)(B) is satisfied, (2) the prospective defendant received notice of the action within ninety days of the complaint's filing, and (3) in the same ninety-day period, the prospective defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Restated more simply, 15(c)(1)(C) requires a showing of (1) the same conduct, transaction, or occurrence, (2) notice, and (3) mistake. Since the first two Rule 15 tests do not apply to Plaintiff's situation, Plaintiff's amended complaint relates back only if it satisfies these three elements.

The Court is mindful that pleadings filed by a pro se litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *Haines v. Kerner*, 404 U.S. 519 (1972). Accordingly, Plaintiff's Answer for a More Definite Statement (Dkt. 9) is considered an amendment[1] to his original complaint for purposes of the Court's analysis of the application of Rule 15(c). *See Wright v. El Paso Cty. Jail*, 642 F.2d 134, 135 fn.1 (5th Cir. 1981).

**(1) Same conduct, transaction, or occurrence**

Rule 15(c)(1)(C) relation back requires, first, that the amendment "[assert] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." There is no dispute that the claim set forth in Plaintiff's amendment

---

[1] In the hearing of October 28, 2018, the parties stipulated on the record that the more definite statement is a "supplemental pleading"; supplemental pleadings, however, are reserved for a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Plaintiff's more definite statement merely clarifies the events set out in the original complaint.

6

arises out of the March 1, 2014 tasing described in the original complaint, and, therefore, this element is met.

**(2) Notice**

Notice is sufficient under Rule 15(c)(1)(C) if the party to be added has "received such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). Notice must be received within the period prescribed by Rule 4(m) for serving the summons and complaint, a window of ninety days after the complaint's filing. Fed. R. Civ. P. 4(m). Notice may be actual or imputed through an "identity of interest" with the party named on the original complaint. *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998). Plaintiff does not argue that Defendant Ramos had actual notice of the action, but instead argues that notice may be imputed through the identity of interest doctrine.

In *Jacobsen*, the Fifth Circuit held that the Court "will infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." 133 F.3d 315 at 320. The Plaintiff in *Jacobsen* originally brought his § 1983 action against New Orleans Police Officer Osborne, an Unnamed Orleans Parish Criminal Sheriff Deputy "John Doe," the city of New Orleans, and the Sheriff. *Id.* at 317. Long after the statute of limitations had expired and the deadline to amend the pleadings had passed, the plaintiff learned that Officer Osborne was not the arresting officer he intended to sue and moved to amend the complaint to name the officers responsible for his arrest. *Id.* The Court held that there was "a sufficient identity of interest between the newly named arresting officers, Officer Osborne, and the city to infer notice." *Id.* at 320. "Identity of interest," the Court wrote, "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other. In this regard, notice

may be imputed to the new party through shared counsel." *Id*. It is fair to impute notice through shared counsel because, the court explained:

> The original complaint was served on the City Attorney, who represented the original City defendants (the City and Officer Osborne) and would necessarily have represented the newly-named officers. The City Attorney answered the complaint on behalf of the City and Officer Osborne and, to do so, presumably investigated the allegations, thus giving the newly-named officers the clause A notice of the action. Consequently, those officers "knew or should have known" that, but for Jacobsen's mistaken belief that Officer Osborne was the arresting officer, the action would have been brought against them…."

*Id. Jacobsen*'s notice analysis turned on the fact that the two officers were represented by the same attorney, and this was the basis for the Fifth Circuit's determination that there was a sufficient identity of interest to impute notice of the filing of an action. *Jacobsen*, 133 F.3d at 320.

In addition to the relationship between officers of the same police department, and between a police officer and the city that administers the police department, the Fifth Circuit has found an identity of interest between brother-sister companies, as where two interrelated corporations occupy the same offices, have similar names, and the employees for one corporation performs all services for the other, *Gifford v. Wichita Falls & S. Ry. Co.*, 224 F.2d 374, 376 (5th Cir. 1955) (decided before the Rule 15 amendment specifically authorizing relation back of newly named parties), and between a sheriff and a sheriff's office, *Kirk v. Cronvich*, 629 F.2d 404, 408 (5th Cir. 1980). Other circuits have found an identity of interest between a parent and a wholly owned subsidiary, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 474 (4th Cir. 2007) (quoting 6A Charles Alan Wright, et al. § 1499) ("An identity of interest has been found between a parent and a wholly owned subsidiary, as well as between related corporations whose officers, directors, or shareholders are substantially identical and who may have similar names or conduct their business from the same offices") and successor organizations, *Ringrose v. Engelberg Huller Co.*, 692 F.2d 403, 411 (6th Cir. 1982).

Where courts have found an identity of interest between the party to be brought in by amendment and the party mistakenly named on the original complaint, that finding has been predicated in part on the fact that both parties have been represented by the same counsel. *See, e.g.*, *Jacobsen v. Osborne,* 133 F.3d 315 (5th Cir. 1998); *Kirk v. Cronvich*, 629 F.2d 404, 407 (5th Cir. 1980); *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 473 (4th Cir. 2007). The fact that the two parties shared counsel is considered compelling evidence that the prospective party had been alerted to the action prior to being named on the amended complaint. *See, e.g., Sanders-Burns*, 594 F.3d at 366 ("In some cases notice may be imputed based on shared legal counsel, on the theory that when an originally named party and a new party are represented by the same attorney, the attorney is likely to have communicated to the new party that he or she may be joined in the action.") (internal quotation marks omitted); *Kirk*, 629 F.2d at 407 (explaining how service of the original complaint would have provided adequate notice of the action to the party sought to be brought in by amendment).

In this case, there is nothing in the pleadings to suggest that Defendant Ramos knew of the action within Rule 15's ninety-day notice window. Absent allegations of actual notice, Plaintiff argues that notice was imputed to Defendant Ramos through an "identity of interest" with Defendants Molina and Zapata County. (Dkt. Nos. 87, 133). In support of his argument Plaintiff relies on three cases from the Fifth Circuit and two from courts in other circuits: *Jacobsen v. Osborne,* 133 F.3d 315 (5th Cir. 1998); *Kirk v. Cronvich,* 629 F.2d 404 (5th Cir. 1980); *Taite v. Fort Worth Police Dep't*, 4:12-CV-458-Y, 2014 WL 12695943, at *3 (N.D. Tex. Oct. 28, 2014); *Tomlin v. Gafvert*, 13-1980-PHX-SMM (ESW), 2015 WL 4639242, at *5 (D. Ariz. Aug. 4, 2015); and *Culbreth v. Corll*, CIV.A. 09-04277, 2010 WL 4178489, at *1 (E.D. Pa. Oct. 22, 2010). (Dkt. Nos. 87, 133).

The three Fifth Circuit cases that Plaintiff relies on each hold that when a newly named defendant is an officer involved in an incident that gives rise to an action initially brought against another officer of the same law enforcement agency or against the agency itself, and the newly named defendant shares the same attorney with the previously named defendants, notice can be imputed to the newly named defendant through an identity of interest with the originally named defendant. *Jacobsen*, 133 F.3d at 320; *Kirk*, 629 F.2d at 408 fn.4 (finding an identity of interest between the Sheriff and the Sheriff's Office), and *Taite*, 4:12-CV-458-Y, 2014 WL 12695943, at *2 (finding an identity of interest between two Forth Worth Police Department officers). In each of these cases, the court noted that legal counsel shared by the newly named and previously named defendants provided additional evidence that the newly named defendant was likely to have received notice of the suit through investigation of the plaintiff's allegations. *Id.* The rule applied in the Fifth Circuit cases applies equally to the two other cases relied on by Plaintiff.[2]

Plaintiff argues in essence that an identity of interest exists between the parties because Defendant Ramos, Defendant Molina, and the Zapata County Sheriff's Office are together engaged in a "single, unified law enforcement operation." (Dkt. Nos. 87, 133). Defendant Ramos is a Game Warden with the Texas Parks & Wildlife Department, an agency of the state of Texas; Defendant

---

[2] In *Tomlin*, an unpublished opinion from the District of Arizona, the court found an identity of interest between the served defendant and the intended defendant, both Mesa Police Department Officers, because both were Mesa police officers, both were present and involved in the event underlying plaintiff's excessive force claim, both were alleged to have committed the same violation, both continued to work as Mesa police officers, and both were represented by the same legal counsel. 2015 WL 4639242, at *5. Likewise, in *Culbreth*, the court found an identity of interest between two officers with the Lancaster City Police Department because the two officers were partners from the time of the incident through the time the plaintiff filed his complaint, both parties were present when the incident occurred, and both parties continued to work closely together. 2010 WL 4178489, at *1. There, the court's identity-of-interest inquiry turned on the determination that the "working relationship" between the parties was close enough that it would be fair to impute notice to the newly named defendant. *Id.* at *3. The *Culbreth* court found that the relationship between the two police officers was indeed so close that it was "inconceivable that upon being served with plaintiff's complaint [the previously named defendant] did not mention the lawsuit to [the newly named defendant]." *Id.* Although the court did not base its finding of an identity of interest on shared counsel—there was no evidence that the parties shared an attorney within the Rule's notice window—the court held that the fact that the newly added defendant was now represented by the same counsel supported a finding that he would not suffer prejudice within the meaning of Rule 15(c)(1)(C)(i). *Id.* at *4.

Molina is a sheriff's deputy with the Zapata County Sheriff's Office, a county-level law-enforcement agency; and Zapata County is a county-level political subdivision of the state of Texas and the legal entity that governs the Zapata County Sheriff's Office.

The Court finds that the Plaintiff's allegations regarding the working relationship between the Texas Parks & Wildlife Department game wardens and the Zapata County Sheriff's Office is not sufficient to create an identity of interest under *Jacobsen*. Plaintiff offers no legal authority holding that an identity of interest exists between officers of two separate law enforcement agencies, or between a county-level agency and state-level agency. Defendant Ramos does not share legal counsel with Defendant Molina or the Zapata County Sheriff's Office. There is no indication that Defendant Ramos would otherwise have shared the same attorney had he been named in the original complaint. Defendant Ramos, as an officer of a state-level agency, is represented by the Texas Attorney General, while all county-level defendants are represented by the same private counsel. There is nothing in the pleadings to suggest that the county-level defendants' counsel, in investigating Plaintiff's original allegations, would have put Defendant Ramos on notice that, but for Plaintiff's mistake, he would have been added to the litigation.

Furthermore, assuming for the sake of argument that Plaintiff has pleaded sufficient facts to establish an identity of interest between Defendant Ramos and the other Defendants named in Plaintiff's Original Complaint or more definite statement, Plaintiff must also show that Defendant Ramos received imputed notice within the period prescribed by Rule 4(m) for serving the summons and complaint, a period of ninety days after the complaint's filing. Fed. R. Civ. P. 4(m). Using the latest-filed pleading date as most favorable to Plaintiff, which was the more definite statement filed on February 5, 2016 (Dkt. No. 9), the Rule 4(m) 90-day period expired on May 5, 2016. In fact, the Court's file establishes that no defendant in this case received notice of this

11

lawsuit earlier than October 11, 2016, when Plaintiff's more definite statement was mailed by the Court to Defendants Zapata County and the Zapata County Sheriff. (Dkt. Nos. 13-14, 16-17). Accordingly, Plaintiff has failed to establish that Defendant Ramos received imputed notice of the lawsuit within the Rule 4(m) period for service of Plaintiff's Answer for a More Definite Statement.

For the foregoing reasons, the Court finds no identity of interest between Defendant Ramos and Defendants Molina or Zapata County, and finds that Plaintiff has failed to establish that Defendant Ramos had received notice, actual or imputed, within the meaning of Rule 15(c)(1)(C)(i). However, even if the Court were to assume that such an identity of interest did exist, and Defendant Ramos had received sufficient notice, Plaintiff's complaint would still not relate back. As discussed below, Plaintiff did not make a "mistake" within the meaning of Rule 15(c)(1)(C)(ii), and his amended complaint therefore does not relate back.

**(3) Mistake**

Rule 15(c)(1)(C)(ii) requires Plaintiff to show that within the Rule 4(m) period the prospective defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." In *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010), the Supreme Court held that a "mistake," for purposes of relation-back, depends on "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." In support of its holding, the Court explained that the purpose of the relation-back doctrine is:

> to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits. See, e.g., Advisory Committee's 1966 Notes 122; 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed.2009). A prospective

defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

However, many courts, including the Fifth Circuit, maintain the rule that a plaintiff who has named a pseudonymous defendant like a "John Doe" in an original pleading has not made a "mistake" in identifying the correct defendant: "Under the majority rule, an amended pleading that seeks to properly name individuals does not relate back to an earlier pleading that had identified those parties as "Doe" parties or has used other pseudonyms." 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary Rule 15. Amended and Supplemental Pleadings (2018) (citing, *inter alia*, *Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013); *Jackson v. Kotter*, 541 F.3d 688, 699, 71 Fed. R. Serv. 3d 785 (7th Cir. 2008); *Whitt v. Stephens County*, 529 F.3d 278, 282–83 (5th Cir. 2008); *Garrett v. Fleming*, 362 F.3d 692, 697, 58 Fed. R. Serv. 3d 396 (10th Cir. 2004); s*ee also Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998); *Balle v. Nueces Cty., Texas*, 690 F. App'x 847, 850 (5th Cir. 2017).

In *Jacobsen*, the Fifth Circuit observed that Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." 133 F.3d at 320. In the case of a "John Doe" defendant, the court held, "there [is] no 'mistake' in identifying the correct defendant; rather, the problem [is] not being able to identify that defendant." *Id.* at 321; *see also Balle,* 690 F. App'x at 849–51; *Waters v. City of Hearne, Tex.*, 629 F. App'x 606, 609 (5th Cir. 2015); *Whitt*, 529 F.3d at 282–83; *Benjamin v. Baytown Police Dep't*, No. 4:17-CV-01198, 2018 WL 1033255, at *1 (S.D. Tex. Feb. 21, 2018).

Plaintiff desires to relate back his claims against Defendant Ramos to Plaintiff's Answer for a More Definite Statement, instead of to his Original Complaint, which only identified "other unknown deputies of Zapata County" (Dkt. No. 1). Defendant Ramos argues that Plaintiff intended that Defendant Ramos was one of the "unknown Deputies of Zapata County" in the Original Complaint (Dkt. No. 1) and one of "the other Zapata County Deputies on scene of the tasing" in the more definite statement (Dkt. No. 9).

For Plaintiff to relate his claims against Defendant Ramos back to the more definite statement, he must point to a specific party that he named by mistake in the more definite statement in Defendant Ramos's stead. The pleadings contain only two references that could serve as antecedents in Plaintiff's analysis: "the other Zapata County Deputies on scene of the tasing" and "Raymon Moya." (Dkt. No. 9). If the pleadings referred to Defendant Ramos as one of the "other Zapata County Deputies," then the amended complaint is governed by the *Jacobsen* rule; but if the pleadings refer to Defendant Ramos as "Raymon Moya," then, as Plaintiff argues, his amended complaint is governed by the *Krupski* rule.

Reviewing the Plaintiff's Answer for a More Definite Statement (Dkt. No. 9) in the light most favorable to Plaintiff, this Court cannot conclude that the "Raymon Moya" named by Plaintiff in his more definite statement was intended to refer to Defendant Ramos; rather, the Court concludes that Defendant Ramos remained one of the "Other Zapata County Deputies on scene of the tasing" referenced in the more definite statement. (Dkt. No. 9 at 5).

Plaintiff's Answer for a More Definite Statement provided additional detail about the identities of the parties he intended to sue in his Original Complaint. In response to the Court's Order for More Definite Statement (Dkt. No. 5), Plaintiff filed his More Definite Statement on

February 5, 2016. (Dkt. No. 9). To comply with the Court's order, Plaintiff copied each question in full into his response and wrote his answers beneath them. (*Id.*).

Among the Court's prompts was Question (3):

Your complaint identifies the following defendants in this case: (a) Zapata County, Texas; (b) Sheriff of Zapata County, Texas; and (c) certain unnamed deputies of Zapata County, Texas. Briefly describe the alleged personal involvement of each individual defendant in the use of force outlined in the pleadings. List each defendant and state what he or she did (or did not do) to you that you believe was wrong. Be specific as to personal involvement.

(Dkt. No. 5 at 1:3). In his Answer 3(b), to clarify his claim that defendant "Sheriff of Zapata County, Texas" violated his Constitutional rights, Plaintiff states that "Zapata County Deputy Raymon Moya was on scene at the time Plaintiff was tased and has agreed to testify on behalf of the Plaintiff that the tasing was without cause."[3] (Dkt. No. 9 at 3). Under the separate heading of "3(c)," Plaintiff elaborates on the defendants previously identified as "certain unnamed deputies of Zapata County, Texas." (*Id.* at 4). There, Plaintiff identifies Defendant Juan Rene Molina as the previously unnamed deputy that had tased him; but he provides no further details about the identities of any other unnamed defendants. (*Id.*) Plaintiff writes:

"3(c). Certain Unnamed Deputy of Zapata County Texas, who tased Plaintiff as he lay face-down on the ground offering no resistance; Plaintiff now believes this officer's name to be: Deputy Juan Rene Molina. As Plaintiff lay face-down on the ground with his hands above his head, and fingers inter-locked, stating, "I'm not resisting.", Unnamed Deputy who may be Rene Molina; stood over Plaintiff, and shouting profanities at Plaintiff in Spanish, which Plaintiff translates English as "your not that slick mother fucker," and then the Deputy shot Plaintiff in the back and held the electric taser charge on-going for about (60) sixty seconds. Plaintiff was further harmed by the other Zapata County Deputies on scene of the tasing, but failed to intervene or report the illegal act." [sic] [emphasis in original]

(*Id.* at 4–5).

---

[3] As discussed in more detail, *infra*, Plaintiff argues that he mistakenly identified Defendant Ramos as Raymon Moya in his more definite statement. There is nothing in the record indicating that any effort or attempt was made to serve the person identified as "Ramon Moya" at any time prior to Defendant Ramos being named as a party in this lawsuit.

Plaintiff's more definite statement contains exactly three references to law-enforcement officers who were at the scene of the tasing. Under Answer 3(b), he refers to "Zapata County Deputy Raymon Moya," and under Answer 3(c), discussing "certain unnamed deputies of Zapata County, Texas," he refers to "Certain unnamed Deputy of Zapata County, Texas, who tased Plaintiff as he lay face-down on the ground offering no resistance […] Deputy Juan Rene Molina" and "other Zapata County Deputies on scene of the tasing, but failed to intervene or report the illegal act." (emphasis in original). *Id.* The language of these allegations echoes Plaintiff's claim that "Defendant Ramos could have intervened" to prevent Plaintiff's injuries. (Dkt. No. 71 at 22:103). Considering the parallels between the allegations against Defendant Ramos in the First Amended Complaint and the allegations against the unnamed deputies in the more definite statement, the Court finds that Plaintiff's more definite statement refers to Defendant Ramos as one of the "Unknown Deputies of Zapata County."

Plaintiff contends that his substitution of Defendant Ramos was not for one of the unnamed sheriff's deputies but was for "Raymon Moya." (Dkt. 133). The Court finds this argument unpersuasive for multiple reasons. In his reference to Raymon Moya under Answer 3(b) of his more definite statement, Plaintiff asserts that Raymon Moya "was on the scene at the time Plaintiff was tased." He goes on to assert that Raymon Moya "has agreed to testify on behalf of the Plaintiff that the tasing was without cause." Plaintiff's description of Raymon Moya suggests that Plaintiff not only knew specifically who Raymon Moya was, but also that there had been some form of communication between Plaintiff and Moya about Moya's perception of the tasing incident.[4]

---

[4] The Court notes that when Plaintiff first identified Defendant Rene Molina for the first time by name in his more definite statement, Plaintiff referred to him as, "Certain Unnamed Deputy of Zapata County Texas, who tased Plaintiff as he lay face-down on the ground offering no resistance; Plaintiff now believes this officer's name to be: Deputy Juan Rene Molina. […]." (italics added). (Dkt. No. 9 at 4-5). In other words, Plaintiff specifically stated that Defendant Molina was identified as the "unnamed deputy" in his Original Complaint. Plaintiff makes no such reference to

In fact, it appears Plaintiff is well-aware that a person by the name of "Moya" was at the scene of the tasing. Plaintiff's Motion to Take Additional Depositions (Dkt. 98) specifically identifies David Moya as a witness to the tasing incident who was in the immediate vicinity of Plaintiff and Defendant Molina at the time of the tasing. (*Id.* at 2). During the hearing on the motion, Plaintiff further identified David Moya as an eye-witness to the tasing (Dkt. 119 at 20-21) and identified David Moya as being the closest eye-witness to the tasing (*Id.* at 33); yet at the time of the hearing he was still not sure why David Moya was at the scene or whether he was a current or former employee of Zapata County. (*Id.* at 33-34).

Plaintiff argues that because Defendant Ramos was allegedly the only other law enforcement officer on the scene, Plaintiff's reference to "Raymon Moya" under Answer 3(b) must constitute a mistaken identification of Defendant Ramos.[5] (Dkt. Nos. 87, 133). But this reasoning is not supported by Plaintiff's earlier statements. Plaintiff's First Amended Complaint alleges that there were multiple other persons present at the scene at the time of the tasing incident. (Dkt. No. 71 at 7-11). Furthermore, Plaintiff's Answer 3(c) states that "Plaintiff was further harmed *by the other Zapata County deputies on scene of the tasing*, but failed to intervene or report the illegal act"—this being contemporaneous with Plaintiff's naming of Raymon Moya and Rene Molina as deputies at the scene. (emphasis added) (Dkt. 9 at 3-5). At least at the time he prepared his Answer for a More Definite Statement, it is apparent that Plaintiff understood that there were more than

---

"Raymon Moya" as a previously unnamed sheriff's deputy, indicating that he was an independent addition to the more definite statement.

[5] In his advisory brief, Plaintiff argues that a liberal construction of his pro-se pleadings requires the Court to infer that Plaintiff's original complaint indicates an intention to sue "Raymon Moya." (Dkt. No. 133 at 10). Plaintiff argues that but for an error of omission—his failure to name "Raymon Moya" as a defendant in his original complaint—his original complaint would have contained the name "Raymon Moya," and Plaintiff would have had a basis to substitute in Defendant Ramos's name. Plaintiff offers no authority to suggest that such an error of omission constitutes a "mistake" within the meaning of Rule 15(c)(1)(C)(ii). Plaintiff in essence asks the Court to read "mistake" non-technically in order embrace several layers of pleading errors. The Court notes, moreover, that nothing in the record reflects that Plaintiff made any attempt to serve a "Raymon Moya" identified in the more definite statement.

two law enforcement officers at the scene of the tasing. Accordingly, the Court is unconvinced by Plaintiff's argument that when he identified "Zapata County Deputy Raymon Moya" in his more definite statement, he must by default have been referring to Defendant Ramos, a Game Warden with the Texas Parks & Wildlife Department. And if Raymon Moya refers to David Moya, then Defendant Ramos is one of the "other Zapata County Deputies on scene of the tasing."

In the event that Raymon Moya is not a misidentification of David Moya, then "Raymon Moya" would be a completely fabricated name—a pseudonym—that Plaintiff could apply to anyone else at the scene. To this Court, such a pseudonym is the equivalent of "John Doe." Considering the pleadings in the light most favorable to Plaintiff, the Court finds that Raymon Moya is not a mistaken identification of Defendant Ramos for purposes of relating back his claim against Defendant Ramos pursuant to Rule 15(c). The Court concludes that Defendant Ramos is one of "the other Zapata County Deputies on scene of the tasing." Accordingly, under *Jacobsen*, Plaintiff did not make a "mistake" within the meaning of Rule 15(c)(1)(c)(ii), and this Court finds that his amended complaint does not relate back.

This Court will recommend that Defendant Ramos's Motion to Dismiss (Dkt. No. 81) be granted on the grounds that Plaintiff's claims against Defendant Ramos are barred by the expiration of the applicable statute of limitations.

## C. Equitable Tolling

Plaintiff also argues that the Court "need not reach the relation back issue" because the statute of limitations should be equitably tolled. (Dkt. No. 133 at 2). "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995). "Traditional equitable principles preclude a court from invoking equitable tolling, however, when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations."

18

*Id*. "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control." *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "Texas courts sparingly apply equitable tolling and look, inter alia, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence…. Federal courts also apply the doctrine sparingly." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (citations omitted) (internal quotation marks omitted).

In support of his argument for equitable tolling, Plaintiff cites the Fifth Circuit's decision in *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007). The *Green* court held that the plaintiff's § 1983 claim should have been equitably tolled "because the delay in determining the identity of 'John Doe' [was] not attributable to" the plaintiff's actions. *Id*. The plaintiff had "filed motions for discovery twice before limitations expired" but "the district court denied both motions." *Id*. Moreover, he had filed his lawsuit "almost eleven months before the running of the statute." *Id*. Thus, "if he had not been denied discovery he would have had sufficient time to identify the officer and amend his complaint under rule 15(a) without need to relate back under rule 15(c)." *Id.* at 720. The *Green* court expressly distinguished its decision from *Jacobsen*, noting that in *Jacobsen*

> there was no justification for equitable tolling; the delays that plagued the case were the fault of the plaintiff; the defendants sought to move discovery forward. Plaintiff had the assistance of discovery but failed to take advantage of that power and depose witnesses in a timely manner that would have allowed him to identify the "John Doe" and amend his complaint.

*Id*. at 719

To refuse to equitably toll Green's statute of limitations after he had "diligently sought to discover the identity of 'John Doe' would be tantamount to eliminating the use of a 'John Doe' in bringing any suit." *Id*. While John Doe suits are "disfavored," they "[serve] the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants. *Id*.

Revisiting the issue in *Balle v. Nueces Cty., Texas*, 690 F. App'x 847, 851 (5th Cir. 2017), the court once more highlighted that its decision in *Green* "was careful to distinguish [the plaintiff's] case from *Jacobsen*." The *Balle* court held that equitable tolling was unnecessary, because plaintiff had filed his complaint days before the end of the limitations period, and so his "inability to determine the identities of the Jane Does before the limitations period had run was attributable to his own decision to file his suit so close to the end of the limitations period." *Id*. In contrast, the plaintiff in *Green* "sued almost eleven months before the running of the statute and, given the specificity of knowledge he had, if he had not been denied discovery he would have had sufficient time to identify the officer and amend his complaint under rule 15(a) without need to relate back under rule 15(c)." *Green*, 260 F. App'x at 719. The district courts have also refused to equitably toll a limitations period where a plaintiff filed suit too late to allow discovery into an officer's identity. *See, e.g.*, *Nazerzadeh v. Harris Cty.*, No. CIV A H08-0499, 2010 WL 3817149, at *36 (S.D. Tex. Sept. 27, 2010); *Amin-Akbari v. City of Austin, Tex.*, 52 F. Supp. 3d 830, 842 (W.D. Tex. 2014).

In the instant case, Plaintiff filed his complaint on December 11, 2015, less than three months before the statute of limitations was set to expire. Plaintiff argues that "the delay in determining the identity of the "other unknown deputies of Zapata County on scene at the time [he] was tased…was 'not attributable'" to him. (Dkt. No. 133 at 3). Implicit in this argument is an assumption that the delay was attributable to some other cause and that the delay prevented Plaintiff from conducting discovery on the parties' identities. In *Green*, that cause was the court's erroneous denial of the plaintiff's requests to conduct discovery. 260 F. App'x at 719. If the court in *Green* hadn't denied the plaintiff's requests, the identity of the John Doe would have been discovered before relation-back became necessary. Here, however, there is nothing to attribute the

inability to determine the identity of the Unknown Deputies before the limitations period had run except Plaintiff's decision to wait until the end of limitations period to file his complaint, leaving himself too little time to conduct discovery. As a practical matter, filing suit eighty days prior to the expiration of the statute of limitations does not afford enough time for a party to conduct discovery on the identity of John Doe defendants. The deadline for defendants to serve initial disclosures would not fall within that eighty-day time period.

Accordingly, under the facts of this case, where Plaintiff filed his complaint less than three months before the expiration of the statute of limitations, the Court will recommend that the statute of limitations not be equitably tolled.

## D.  Sovereign Immunity

Defendant Ramos argues: "To the extent that [Plaintiff] is suing [Defendant Ramos] for money damages in his official capacity, such a claim is barred by the Eleventh Amendment. (Dkt. Nos. 81 at 4, 130 at 7). A suit against a state official in his official capacity should be treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment to the U.S. Constitution bars suits in federal court against a State by anyone other than the federal government or another State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Neuwirth v. Louisiana State Bd. Of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988).

In his First Amended Complaint, Plaintiff alleged that Defendant Ramos is sued "in his individual capacity." (Dkt, No. 71 at 2:6). There are no allegations that Defendant Ramos is sued in his official capacity. Nevertheless, to the extent that Plaintiff is suing Defendant Ramos in his official capacity, the Court finds that his suit is barred by the Eleventh Amendment.

### 2.  The Motion to Strike and Motion for Leave to Amend

Having considered the merits of Defendant Ramos's limitations defense, the Court must address the two other motions pending in this action: Defendant Ramos' [sic] Opposed Motion to Strike Plaintiff's Second Amended Complaint and Brief in Support (Dkt. No. 86), and Plaintiff's Omnibus Motion for Leave to Amend and Response to Defendant Ramos's Motions to Dismiss and to Strike (Dkt. No. 87).

Plaintiff filed his original complaint, pro se, on December 11, 2015. (Dkt. No. 1). On February 1, 2018, after current counsel had entered a notice of appearance (Dkt. No. 64), Plaintiff moved for leave to file an amended complaint (Dkt. No. 66). The Court granted leave, and Plaintiff filed his First Amended Complaint on March 13, 2018. (Dkt. No. 70). On May 10, 2018, Defendant Ramos filed his Motion to Dismiss. (Dkt. No. 81). Twenty-one days later, on May 31, 2018, Plaintiff filed his Second Amended Complaint. On June 5, 2018, Defendant Ramos filed his Motion to Strike Plaintiff's Second Amended Complaint and Brief in Support. (Dkt. No. 86). Plaintiff thereafter filed his Omnibus Motion for Leave to Amend and Response to Defendant Ramos's Motions to Dismiss and to Strike. (Dkt. No. 87).

### A.  Defendant's Motion to Strike the Second Amended Complaint

Defendant Ramos moves to strike Plaintiff's Second Amended Complaint on the grounds that it was filed without leave of court or Defendants' consent. (Dkt. No. 86 at 1). Defendant Ramos predicates his motion on the assertion that Fed. R. Civ. P. 15(a)(1) permits amendment as a matter of course only within twenty-one days after service of the original complaint, and that, thereafter, a party may amend only with leave of court or consent of the other party. (*Id.*) Plaintiff argues that Defendant "misreads the rule." (Dkt. No. 87 at 7).  Under Plaintiff's reading, Plaintiff preserved the right to amend once as a matter of course because the First Amended Complaint was

filed with leave of court.

Fed. R. Civ. P. 15(a)(1) provides: "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Although the Court does not agree with Defendant Ramos's reasoning, it determines that Plaintiff was not entitled to file his Second Amended Complaint as a matter of course. Under a plain reading of Rule 15(a)(1)(B), a plaintiff may amend a pleading up to twenty-one days after a motion to dismiss is filed as long as (1) the pleading to be amended requires a responsive pleading, (2) plaintiff has not already amended his pleading, and (3) no earlier responsive pleading has been served. Plaintiff cannot show that any of these is true.

First, Plaintiff's First Amended Complaint is not a "pleading to which a responsive pleading is required. *See* Fed. R. Civ. P. 7 (listing allowed pleadings). Second, Plaintiff has already amended his pleading. (Dkt. No. 71); *see Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) (holding that a plaintiff could not amend his complaint as of right because he had already amended his complaint once, at the court's direction, to add the correct names of "John Doe" defendants). Finally, even if Plaintiff could overcome these hurdles, an answer to the Amended Complaint had already been filed on April 24, 2018. (Dkt. No. 77). The twenty-one day period would thus have begun to run from that date, and Plaintiff's Second Amended Complaint, filed May 31, 2018, would not have been timely.

Accordingly, this Court will recommend that Defendant Ramos' Opposed Motion to Strike Plaintiff's Second Amended Complaint (Dkt. No. 86) be granted on the grounds that Plaintiff filed his Second Amended Complaint without leave of court or consent of the other parties.

**B.  The Motion for Leave to Amend**

When a plaintiff's complaint fails to state a claim upon which relief can be granted, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Grants of leave to amend are inappropriate, though, where they would result in amendments that are frivolous or futile. *See Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (per curiam) ("[A] district court acts within its discretion when denying a motion to amend that is frivolous or futile." (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))). An amendment is futile if it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5th Cir.2000). The legal standard for denying an amendment as futile is the same as the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Id.*

Initially, the Court notes that Plaintiff's motion for leave to amend, as contained in Plaintiff's Omnibus Motion for Leave to Amend and Response to Defendant Ramos's Motions to Dismiss and to Strike (Dkt. No. 87), does not comply with the Local Rules of the Southern District of Texas because it does not include a certificate of conference nor a proposed order. *See LR 7.1.* This reason alone is sufficient to deny Plaintiff's motion for leave to amend. *Barrie v. Nueces Cty. Dist. Attorney's Office*, 2018 WL 5095824, at *5 (5th Cir. Oct. 17, 2018).

Even if Plaintiff had complied with the local rules, his proposed amended pleading would still be futile. Plaintiff argues that amendment is not futile because "it establishes that Mr. Salazar's claims against Defendant Ramos relate back to his original complaint." (Dkt. No. 87 at 10). As discussed above, as part of Plaintiff's Rule 15(c) relation back argument, Plaintiff asserts that notice should be imputed to Defendant Ramos through an identity of interest with the Zapata

County Sheriff's Office and Deputy Molina. To this end, the Second Amended Complaint, attached as an exhibit to Plaintiff's response to the motion to dismiss, adds allegations that purport to show an identity of interest between those defendants. (Dkt. No. 87–2). Specifically, it alleges that the Zapata County Sheriff's Office and the Texas Parks & Wildlife Department cooperate in realizing a shared goal of "enforcing the laws of the state of Texas"; that they share some authority; that, in exercising authority,  game wardens assist Zapata County Sherriff's Deputies on a daily basis, including with over 50% of all service calls; and that game wardens transport arrestees to the Zapata County Regional Jail for booking and detention. (Dkt. No. 87–2 at 14:61). The proposed pleading further alleges that Defendant Ramos "interacts with Zapata County Sheriff's deputies and sergeants on a regular basis," is in regular contact with Zapata County employees, and has developed close personal friendships with many of them. (*Id.* at 15:62).

Taken "in the light most favorable to the Plaintiff and with every doubt resolved in his behalf," *Stripling*, 234 F.3d at 873, the additional allegations contained in Plaintiff's Second Amended Complaint are not sufficient to establish that Plaintiff's claims against Defendant Ramos relate back to Plaintiff's Original Complaint and defeat Defendant Ramos's statute of limitations defense. The Court determines that not only are Plaintiff's additional allegations insufficient under the existing case law to establish an identity of interest to impute notice of the lawsuit to Defendant Ramos, the additional allegations do not address the other elements of Rule 15(c) for relation back of Plaintiff's claims against Defendant Ramos.

Accordingly, this Court will recommend that Plaintiff's Motion for Leave to Amend (Dkt. No. 87) be denied.

### V.    Conclusion

Considering the pleadings in the light most favorable to the Plaintiff, Plaintiff's First Amended Complaint does not relate back to his Original Complaint or his Answer for More Definite Statement, and his claims against Defendant Ramos are barred by the applicable two-year statute of limitations. The statute of limitations on Plaintiff's claims against Defendant Ramos should not be equitably tolled. Plaintiff's claims against Defendant Ramos in his official capacity, to the extent there are any such claims, are barred by the Eleventh Amendment. Plaintiff's Second Amended Complaint should be stricken, and leave to amend the complaint should be denied.

### VI.    Recommendation

For the foregoing reasons, the Magistrate Judge recommends that the District Court **GRANT** Defendant Ramos' [sic] Motion to Dismiss (Dkt. No. 81), **GRANT** Defendant Ramos' [sic] Opposed Motion to Strike Plaintiff's Second Amended Complaint (Dkt. No. 86), and **DENY** Plaintiff's Motion for Leave to Amend (Dkt. No. 87). The Magistrate Judge recommends that Plaintiffs' claim against Defendant Ramos be **DISMISSED** with prejudice.

### VII.    Notice of Right to Object

The parties may file written objections to this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  If a party objects within fourteen days after receiving service of this Report, the District Court will review *de novo* the findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996).  The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  If a party does not object within fourteen days, the party forfeits its right to District Court review.  *Thomas*, 474 U.S. at 150.  Furthermore, if the parties do not object and then the

District Court accepts this Report's findings and legal conclusions, on appeal such findings and conclusions will be reviewed only for plain error.  *Douglass*, 79 F.3d at 1428.

SIGNED on December 6, 2018, at Laredo, Texas.

_____
JOHN A. KAZEN
United States Magistrate Judge