UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **JUAN CARLOS SALAZAR,** | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:16-CV-00292 |
| | § | |
| **ZAPATA COUNTY, TEXAS,** *et al.*, | § § | |
| Defendants. | § § | |

## MEMORANDUM & ORDER

This civil-rights suit arose from an encounter between Plaintiff Juan Carlos Salazar and Defendant law enforcement officers on March 1, 2014. (Dkt. 1 at 3.) Plaintiff alleges that Defendants tased him without cause during an arrest and then destroyed evidence of the incident. (*Id.* at 3–4.) Before the Court is Defendant Steven Ramos's motion to dismiss (Dkt. 81), which the Court referred to Magistrate Judge John A. Kazen for findings and recommendations (Dkt. 113). On December 6, 2018, the Magistrate Judge issued his Report and Recommendation (R&R) recommending that the motion be granted. (Dkt. 136.) In the same order, he granted Defendant Ramos's "Motion to Strike Plaintiff's Second Amended Complaint and Brief in Support" (Dkt. 86) and denied Plaintiff's "Omnibus Motion for Leave to Amend and Response to Defendant Ramos's Motions to Dismiss and to Strike" (Dkt. 87).[1] Plaintiff timely objected to the R&R. (Dkt. 139.) Having conducted a *de novo* review of the challenged portions of the R&R, the Court finds that Plaintiff's objections are without merit. *See* 28 U.S.C. § 636(b)(1); Fed. R.

---

[1] Magistrate Judge Kazen resolved the motion to strike and motion for leave to amend in the same document as his R&R on Ramos's motion to dismiss. (Dkt. 136.) However, because the motion to strike and motion for leave are not dispositive, Judge Kazen's findings on them are rulings, not mere recommendations. 28 U.S.C. § 636(b)(1)(A); *see Mahoney v. Ernst & Young LLP*, 487 F. Supp. 2d 780, 797 (S.D. Tex. 2006); *Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of La., Inc.*, 2010 WL 4176858, at *1 (E.D. La. Oct. 20, 2010).

Civ. P. 72(b)(3). Thus, Plaintiff's objections are overruled, the R&R is accepted, and Ramos's motion to dismiss is granted.

**Factual Background**

Plaintiff seeks damages for physical and psychological injuries he allegedly suffered after being tased by a Zapata County Sheriff's Deputy. (Dkt. 71 at 30–31; *see* Dkt. 9 at 6–7.) In his initial pro se complaint, Plaintiff alleged that an "unknown deputy" of the Zapata County Sheriff's Office tased him without cause during a 2014 arrest. (Dkt. 1 at 3.) He further alleged that, after the tasing, the Zapata County Sheriff erased a video recording of the incident, presumably in order to stymy Salazar's efforts at redress. (*Id.* at 3–4.) Plaintiff claimed that one or more "other unknown deputies" of the Zapata County Sheriff's Office were also "on scene at the time [he] was tased." (*Id.* at 3.)

Upon Court order[2] (Dkt. 5), Plaintiff filed a more definite statement of his complaint in February of 2016 (Dkt. 9). There he named Deputy Juan Rene Molina as the officer who tased him. (*Id.* at 4.) Plaintiff also named Deputy Raymon Moya as an eyewitness to the incident and stated that Moya had "agreed to testify on behalf of the Plaintiff that the tasing was without cause." (*Id.* at 3.) Finally, Plaintiff alleged that he "was further harmed by the other Zapata County deputies on scene" who "failed to intervene or report the illegal act." (*Id.* at 5.) In a subsequent discovery motion filed on December 1, 2016, Plaintiff identified three additional individuals as potential eyewitnesses to the tasing: two Zapata County Sheriff's Office deputies and "Texas Parks and Wildlife officer Stevan [sic] Ramos." (Dkt. 26 at 2.) This is the first time Ramos is mentioned in the record. In an October 2017 advisory, Plaintiff again described

---

[2] Plaintiff initially filed suit in the Houston Division of the Southern District of Texas. (Dkt. 1 at 1.) The case was transferred to this Court in September of 2016 because "all of the events or omissions alleged by Plaintiff took place in Zapata County, . . . within the Laredo Division of the Southern District of Texas." (Dkt. 11 at 2.)

"Steven Ramos, Game Warden with the Texas Parks and Wildlife Department" as a "key witness," not a potential defendant. (Dkt. 61 at 2–3.)

Ramos was not named as a defendant until Plaintiff filed his first amended complaint with leave of Court on March 13, 2018. (Dkt. 71; *see* Dkt. 70 at 5.) The amended complaint asserts a 42 U.S.C. Section 1983 bystander liability claim against Ramos, who allegedly assisted Zapata County Sheriff's deputies in their pursuit of Plaintiff after Plaintiff led the police on a car chase. (Dkt. 71 at 5, 21–25.) Ramos allegedly maneuvered his cruiser across the road in order to prevent Plaintiff's escape. (*Id.* at 5.) In a series of photos, Plaintiff identifies Ramos as standing nearby while Molina tased Plaintiff. (*Id.* at 7–11.) Plaintiff argues that Ramos violated his civil rights by failing to "intervene to prevent harm" either before or during the tasing. (*Id.* at 22; *see id.* at 10–11, 24.)

Defendant Ramos has moved to dismiss the claim against him as time-barred, pointing out that he was not named as a defendant until two years after the statute of limitations had run. (Dkt. 81 at 3.) In response, Plaintiff argues that the amended complaint naming Ramos as a defendant relates back to his initial complaint. (Dkt. 87 at 2, 12–15.) And even if the amended complaint does not relate back, Plaintiff argues, the statute of limitations should be equitably tolled because he was prevented from learning Ramos's identity until after the statute had run. (Dkt. 133 at 2–3.)

In his R&R, Magistrate Judge Kazen recommended that the Court grant Ramos's motion to dismiss because the claims against him do not relate back to the original complaint. (Dkt. 136 at 18.) Judge Kazen also rejected Plaintiff's equitable tolling argument, finding that the delay in ascertaining Ramos's identity was due to Plaintiff's own tardiness in filing his lawsuit. (*Id.* at 21.) Plaintiff objects to Magistrate Judge Kazen's "findings regarding the statute of limitations

and relation-back analysis," as well as his conclusion on equitable tolling.[3] (Dkt. 139 at 1.) Should the Court accept Judge Kazen's recommendations, though, Plaintiff requests that it "treat Defendant Ramos's Motion to Dismiss as a motion for summary judgment and consider matters beyond the scope of the pleadings in the light most favorable to" Plaintiff. (*Id.* at 2; *see id.* at 5.)

## Legal Standards

### A. *De Novo* Review of Magistrate Judge's Report and Recommendation

A magistrate judge may only issue recommendations, not final orders, on dispositive motions such as motions to dismiss.[4] Fed. R. Civ. P. 72(b); *see* 28 U.S.C. § 636(b)(1)(A). If a party timely objects to a magistrate's R&R, the district court must "make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

### B. Rule 12(b)(6) Motion to Dismiss

A civil claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[3] Although Plaintiff also indicates disagreement with Magistrate Judge Kazen's ruling on his motion for leave to amend (Dkt. 139 at 5), he does not formally object to it (*id.* at 1).

[4] Had Plaintiff objected to Judge Kazen's contemporaneous rulings on Ramos's motion to strike and Plaintiff's motion for leave to amend, the Court would review those rulings for clear error. *See* Fed. R. Civ. P. 72(a) (providing that, upon timely objection, the district court must "modify or set aside any part of [a magistrate's] order" on a non-dispositive motion "that is clearly erroneous or is contrary to law"). However, because both of Plaintiff's objections are addressed to Judge Kazen's R&R on Ramos's motion to dismiss, the Court need not review the other rulings. (Dkt. 139 at 1.)

level." *Id*. While all well-pleaded facts set forth in the complaint are to be accepted as true, legal conclusions "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), nor should a court strain to make unwarranted inferences favorable to the plaintiff, *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). The expiration of the statute of limitations "support[s] dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

**C.     The Relation-Back Doctrine**

Once the statute of limitations has run on his claim, a plaintiff generally may not amend his complaint to add a new defendant. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001). Relation-back offers a limited exception to this rule. Under the doctrine of relation-back, a plaintiff may amend his complaint "to add a new party, claim or defense that arises out of the conduct, occurrence or transaction alleged in [the] original pleading and that would otherwise be time-barred." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 945–46 (S.D. Tex. 2013). If an amended pleading relates back, it is "treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint." *Id.* at 946; *see Jacobsen v. Osborne*, 133 F.3d 315, 318–19 (5th Cir. 1998). The Supreme Court has explained the policy underlying the relation-back doctrine:

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010). The federal relation-back doctrine is governed by Federal Rule of Civil Procedure 15(c)(1), which provides in full:

An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [that is, within 90 days of the filing of the complaint], the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

It is undisputed that this case falls under Rule 15(c)(1)(C). (Dkt. 139 at 2–3.) Thus, Plaintiff's amended complaint naming Ramos as a defendant relates back to the original complaint only if: (1) Plaintiff's claim against Ramos arose out of the March 2014 tasing; (2) Ramos received notice of the action within 90 days of the filing of Plaintiff's original complaint; and (3) Ramos knew or should have known that he would have been named as a defendant but for a mistake about his identity.

## D. Equitable Tolling

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995). It is a discretionary doctrine that "turns on the facts and circumstances of [each] particular case." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). Because the statute of limitations for Section 1983 claims is borrowed from Texas law, *see Owens v. Okure*, 488 U.S. 235, 249–50 (1989), "Texas' equitable tolling principles also control," *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). Consistent with the Supreme Court's guidance, "Texas courts

sparingly apply equitable tolling" to prevent plaintiffs from "us[ing] the doctrine to avoid the consequences of their own negligence." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (internal quotation marks omitted); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (cautioning that equitable tolling "is to be applied sparingly").

A court should not invoke equitable tolling "when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations." *Lambert*, 44 F.3d at 299. Rather, for equitable tolling to apply, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017); *see Farmer v. D & O Contractors, Inc.*, 640 F. App'x 302, 304 (5th Cir. 2016). Typically, this requires that some force completely outside of the plaintiff's control has prevented him from complying with the statute of limitations. *See, e.g.*, *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (noting that equitable tolling was appropriate "where a defendant misled the plaintiff into believing that he had more than three years in which to bring" suit); *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (applying equitable tolling where erroneous rulings by the court itself delayed a diligent plaintiff); *see also Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 240 (5th Cir. 2010) (holding that equitable tolling did not apply even where the plaintiff's attorney's staff, unbeknownst to the plaintiff, missed a key filing deadline).

## Discussion

**A.     Plaintiff's First Objection: Relation-Back and the Statute of Limitations**

The arrest that gave rise to Plaintiff's claims occurred on March 1, 2014. (Dkt. 1 at 3.) Plaintiff does not dispute that his claims are subject to a two-year statute of limitations, nor that his cause of action against Ramos accrued on March 1, 2014. (Dkt. 139 at 2; *see* Dkt. 136 at 4.)

Thus, any claim filed after March 1, 2016 is untimely. Plaintiff filed his original, pro se complaint against Zapata County, the Zapata County Sheriff's Office, and several "unknown deputies" on December 11, 2015—well within the limitations period. (Dkt. 1.) However, Plaintiff did not name Ramos as a defendant until he filed his amended complaint with leave of Court on March 13, 2018. (Dkt. 71.) His claim against Ramos is therefore tardy by more than two years, and it can survive a motion to dismiss only if it relates back to Plaintiff's original complaint or if the statute of limitations is equitably tolled.

As discussed above, Plaintiff has conceded that this case falls within Rule 15(c)(1)(C)'s relation-back provision. (Dkt. 139 at 2–3.) Thus, Plaintiff's amended complaint relates back only if: (1) Plaintiff's claim against Ramos arose out of the March 2014 tasing; (2) Ramos received notice of the action within 90 days of the filing of the original complaint—that is, by March 10, 2016; and (3) Ramos knew or should have known that he would have been a defendant but for a mistake about his identity. The Court will address each requirement in turn.

### 1. Same Conduct, Transaction, or Occurrence

In order to relate back to the original complaint, an amendment must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(C). This element is satisfied because Plaintiff's bystander liability claim against Ramos arose from the same tasing incident as his original complaint. (*See* Dkt. 1 at 3–4; Dkt. 71 at 4–11.)

### 2. Imputed Notice

To meet the second element of Rule 15(c)(1)(C)'s relation-back test, the party sought to be added must, within 90 days of the filing of the original complaint, have "received such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P.

15(c)(1)(C)(i). Actual notice is not required; the Fifth Circuit has recognized that notice may be inferred "if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." *Jacobsen*, 133 F.3d at 320; *see Williams v. United States*, 405 F.2d 234, 237 (5th Cir. 1968).

Plaintiff filed his original complaint on December 11, 2015. (Dkt. 1.) Thus, in order for the amended complaint to relate back, Ramos must have received notice by March 10, 2016. Plaintiff does not contend that Ramos received actual notice of the lawsuit. Instead, he argues that notice should be imputed through the identity of interest Ramos allegedly shares with the Zapata County Sheriff's Office in general and with Defendant Molina in particular. (Dkt. 139 at 3; *see* Dkt. 133 at 7.) Plaintiff asserts four facts in support of his identity-of-interest theory: (1) Texas Parks and Wildlife game wardens like Ramos assist Zapata County Sheriff's deputies with traffic patrols, investigations, and at least half of the County's service calls; (2) game wardens take their arrestees to the Zapata County Regional Jail because the Texas Parks and Wildlife Department does not maintain a local detention facility; (3) game wardens "have direct access to the Sheriff's Office's radio communications and use that access to aid in law enforcement"; and (4) Ramos is personal friends with Deputy Molina, the County officer who allegedly tased Plaintiff. (Dkt. 87 at 5–6; *see* Dkt. 139 at 3.)

The Court agrees with the Magistrate Judge that these contacts are insufficient to establish an identity of interest between Ramos and the Zapata County defendants named in Plaintiff's original complaint. (Dkt. 136 at 12.) An identity of interest exists only when "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Kirk v. Cronvich*, 629 F.2d 404, 408 n.4 (5th Cir. 1980), *overruled in part on other grounds*, *Schiavone v. Fortune*,

477 U.S. 21 (1986). Common indicators of such identity include identical or similar names, shared office space, co-execution of an estate, acquisition of a corporate entity named in the original pleading, a corporate parent-subsidiary relationship, and shared counsel. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 310 F. Supp. 2d 819, 851–52 (S.D. Tex. 2004). None of these indicators is present in this case.

Of course, the *Enron* list is not exhaustive, and some of its indicators are not relevant to this case. Moreover, it is true that courts within this circuit have repeatedly found identity of interest between a law enforcement defendant named in the original complaint and an individual officer added later. *See, e.g.*, *Jacobsen*, 133 F.3d at 320 (finding identity of interest between a sheriff and later-named sheriff's deputies); *Kirk*, 629 F.2d at 407–08 (finding identity of interest between a sheriff's department and the sheriff himself); *Taite v. Fort Worth Police Dep't*, 2014 WL 12695943, at *3 (N.D. Tex. Oct. 28, 2014) (finding identity of interest between a police department and later-named officers of that department); *see also Whitley v. Sherrod*, 2012 WL 7001535, at *4 (W.D. La. Nov. 26, 2012) (finding identity of interest between successive wardens of a federal prison).

In each of these cases, however, the later-named officer was employed by the *same* law enforcement entity as the defendants named in the original pleading, and all the defendants were represented by the same counsel. The same is true of the Arizona case on which Plaintiff relies heavily. (Dkt. 87 at 13–15.) *See Tomlin v. Gafvert*, 2015 WL 4639242, at *5 (D. Ariz. Aug. 4, 2015). In this case, all the defendants named in the original complaint work for the Zapata County Sheriff's Office, while Ramos works for an entirely separate, state-level agency: the Texas Parks and Wildlife Department. (Dkt. 9 at 3–6; Dkt. 26 at 2.) There is no indication in the record that process was served on anyone affiliated with the Parks and Wildlife Department, or

that any Department employee became aware of the dispute between Plaintiff and Zapata County by March 10, 2016.[5] Moreover, if Ramos were joined as a defendant, he would not share counsel with the County defendants. While all County-level defendants are represented by the same private counsel, Ramos, as an officer of a state-level agency, is represented by the Texas Attorney General. (*See* Dkt. 81 at 5.)

Furthermore, Rule 15 requires the Court to consider equitable as well as factual concerns. Notice is not sufficient under Rule 15 unless the defendant sought to be added will not be "prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). Here, the four-year delay between the alleged tasing and Plaintiff's amended complaint would almost certainly prejudice Ramos's defensive efforts. When *double* the limitations period has expired, a defendant can expect that the concerns at which statutes of limitation are addressed—lost evidence, faded memories, and disappearing witnesses—will be amplified proportionally. *See Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). Indeed, when courts have found identity of interest between a government entity and an individual employee, they have emphasized that the employee "could not claim prejudice due to loss of evidence or undue surprise" because the employing entity would "already have begun investigating the claim and

---

[5] The Magistrate Judge calculated the relation-back notice period from February 5, 2016—the date on which Defendant filed his more definite statement—rather than December 11, 2015, when he filed the original complaint. (Dkts. 1, 9.) Reasoning that pro se filings are entitled to a liberal construction, the Magistrate Judge chose to start the notice clock on the "the latest-filed pleading date" because it was "most favorable to Plaintiff." (Dkt. 136 at 11.) *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 135 n.1 (5th Cir. Unit A Apr. 1981). Thus, the R&R set the notice period deadline at May 5, 2016 rather than March 10. (Dkt. 136 at 11.) However, the Court is unable to find case law supporting relation-back to any date other than the date the original complaint was filed. *See* Fed. R. Civ. P. 15(c)(1) (enumerating the conditions under which "[a]n amendment to a pleading relates back to the date of the *original* pleading" (emphasis added)). In any case, there is no indication that Ramos received actual or constructive notice until after he was named in Defendant's first amended complaint in March of 2018—almost two years after the Magistrate Judge's more lenient notice deadline. (Dkt. 71.)

preserving evidence" when it was named in the original complaint. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 374–75 (5th Cir. 2010); *see Jacobsen*, 133 F.3d at 320.

The same cannot be said here. There is no reason to believe that Ramos or the Parks and Wildlife Department investigated the tasing incident, preserved any evidence in their possession, or otherwise prepared to defend a lawsuit in the four years between the accrual of Plaintiff's claim and the filing of the amended complaint. The Court thus finds that the alleged connections between Ramos and the Zapata County defendants are insufficient to create an identity of interest, and that, if joined as a defendant now, Ramos would be prejudiced in defending against Plaintiff's suit.

### 3. Mistake of Identity

Because an amended pleading must satisfy all three of Rule 15(c)(1)(C)'s requirements in order to relate back to the original complaint, the Court's negative notice finding alone is sufficient to deny relation-back. Nevertheless, the Court will briefly analyze the final prong of the relation-back test. Rule 15(c)(1)(C)(ii) requires Plaintiff to show that, within 90 days of the filing of the original complaint, Ramos "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Plaintiff argues this requirement is satisfied because Ramos should have known that Plaintiff had simply mistaken Ramos for Zapata County Sheriff's Deputy Raymon Moya, one of the officers Plaintiff named as a witness in his more definite statement. (Dkt. 87 at 16; Dkt. 133 at 6, 9; *see* Dkt. 9 at 3.)

The Magistrate Judge's R&R thoroughly analyzes the case law on Rule 15(c)(1)(C)'s mistake requirement and identifies several stumbling blocks for Plaintiff's argument, including unfriendly Fifth Circuit case law on relation-back to pseudonymous defendants. (Dkt. 136 at 13.)

*See Jacobsen*, 133 F.3d at 320. The R&R also identifies inconsistencies in Plaintiff's factual allegations. (Dkt. 136 at 14–17.) For example, Plaintiff's own filings belie his claim of mistake by making clear that he has long known that Moya and Ramos are two different people with different alleged roles in the tasing. (*See, e.g.*, Dkt. 98 at 4.) Plaintiff's earlier statements also contradict his new claim that there was only one deputy other than Molina on the scene during the incident. (*See* Dkt. 1 at 3; Dkt. 9 at 5; Dkt. 71 at 7–11.)

Although the Court agrees with the Magistrate Judge's analysis, it finds that Plaintiff's argument must fail for a more basic reason: Raymon Moya was not identified as a defendant in this case. In his more definite statement, Plaintiff described Moya as a mere eyewitness to the tasing—not an active or passive participant. (Dkt. 9 at 3.) Notably, although Plaintiff did raise claims against "the other Zapata County deputies on scene" who "failed to intervene or report the illegal act," he did not place Moya among their ranks. (*Id.* at 5.) On the contrary, Plaintiff asserted that he had spoken with Moya after the incident and that Moya had "agreed to testify" on Plaintiff's behalf "that the tasing was without cause." (*Id.* at 3.)

Even under the lenient standard afforded pro se complaints, Plaintiff's argument that his own identification of Moya as a friendly witness does not "reflect[] a desire not to sue Moya" strains credulity. (Dkt. 133 at 11.) *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). Plaintiff never intimated that he had any claim against Moya, nor did he attempt to serve anyone named Moya; only *after* Ramos moved to dismiss the amended complaint did Plaintiff claim mistake and argue that Ramos/Moya should have been considered a defendant from the time of Plaintiff's more definite statement. (Dkt. 87 at 15.)

If Plaintiff really did mistake Ramos for Moya, then Ramos is simply a witness—and an allegedly friendly one at that—not the "proper party" required for relation-back. Fed. R. Civ. P.

15(c)(1)(C)(ii). And if Ramos and Moya are one and the same, then Ramos agreed three years ago to testify *for* Plaintiff. No one in that role could "have known that [he] would have been named as a defendant but for an error." *Krupski*, 560 U.S. at 548. This is not a case where the plaintiff understood "that a prospective defendant . . . exist[ed], while erroneously believing him to have the status of" a different defendant because of a "misunderstanding [about] the roles" the two individuals played. *Id.* at 549. (*See* Dkt. 133 at 6.) If we take Plaintiff at his word—that the person previously named as Moya is in fact Ramos—then there is only one role at issue: that of witness, not defendant. Thus, because Plaintiff's amended complaint satisfies only one of Rule 15(c)(1)(C)'s three requirements, it does not relate back to the original filing.

**B.      Plaintiff's Second Objection: Equitable Tolling**

Even if the amended complaint does not relate back, Plaintiff argues, the two-year statute of limitations should be equitably tolled because Plaintiff was prevented from determining the identities of the other officers on the scene until after the statute had run. (Dkt. 133 at 2–3; Dkt. 139 at 5.) Plaintiff claims he had no way of discovering Ramos's identity until the County defendants filed their initial disclosures in November of 2016, nearly six months after the statute of limitations had expired. (Dkt. 133 at 3.)

The Court is mindful that equitable tolling is to be applied sparingly, *Myers*, 464 F. App'x at 349, and is only appropriate where a diligent plaintiff has been prevented from timely filing by "some extraordinary circumstance [that] stood in his way," *Sandoz*, 700 F. App'x at 320. Plaintiff has alleged no such circumstance. Plaintiff does not claim that he was "actively misled by Defendants about [his] claims" or "prevented in some extraordinary way from asserting [his] claims." *Farmer*, 640 F. App'x at 304. Rather, it appears that Plaintiff's late identification of Ramos is due entirely to Plaintiff's own delay in filing his original complaint. If

Plaintiff did not learn Ramos's identity until November of 2016, it was not because of any force outside Plaintiff's control; it was because Plaintiff chose to file his original complaint less than three months before the limitations period was set to expire. (*See* Dkt. 1 at 3; Dkt. 136 at 20–21.) *See Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 851 (5th Cir. 2017) (declining to equitably toll the statute of limitations where the plaintiff's "inability to determine the identities of the [proper defendants] before the limitations period had run was attributable to his own decision to file his suit so close to the end of the limitations period").

As the Magistrate Judge rightly notes, "[a]s a practical matter, filing suit eighty days prior to the expiration of the statute of limitations does not afford enough time for a party to conduct discovery on the identity of John Doe defendants." (Dkt. 136 at 21.) The Fifth Circuit has made clear that a plaintiff's "failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the [plaintiff's] own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Because no such external factors are present in this case, the Court will not equitably toll the statute of limitations.

C.   **Construing a Motion to Dismiss as a Motion for Summary Judgment**

If a Court considers matters beyond the scope of the pleadings in deciding a motion to dismiss, then the motion must be construed as a motion for summary judgment, and the Court must observe Rule 56's notice requirements. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193–94 (5th Cir. 1988). In this case, the Court has not considered any materials outside the pleadings, so it is not required to convert Ramos's motion to dismiss into a summary judgment motion.

Plaintiff nevertheless urges the Court, in the event that it accepts the Magistrate Judge's R&R, to "treat Defendant Ramos's Motion to Dismiss as a motion for summary judgment" in

order to "consider matters beyond the scope of the pleadings in the light most favorable to" Plaintiff. (Dkt. 139 at 2; *see id.* at 5.) It is true that in limited circumstances, "[t]he Court has discretion to convert a motion to dismiss into a motion for summary judgment and thereby consider the matters submitted by the parties that are beyond the scope of the pleadings." *Waldmann v. Fulp*, 259 F. Supp. 3d 579, 588 (S.D. Tex. 2016); *see* Fed. R. Civ. P. 12(d); *Hilton Hotels Corp. v. Tex. Occupational Injury Benefit Plan*, 2007 WL 2987977, at *1 (S.D. Tex. Oct. 10, 2007).

This procedure is generally considered advantageous to the defendant, not the plaintiff, because the defendant effectively gets two motions for the price of one. *See Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979) (per curiam). It is unusual—perhaps unprecedented—for a plaintiff to urge the Court to convert a defendant's motion to dismiss into a summary-judgment motion. It is hard to see what Plaintiff hopes to gain. The Court has already considered all the pleadings in the light most favorable to Plaintiff, *see* Fed. R. Civ. P. 12(b)(6), and Plaintiff does not indicate where the Court might find extra-pleadings materials[6] or what it might find in them. Thus, the Court will not convert Ramos's motion to dismiss into a motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court concludes that the Magistrate Judge's Report and Recommendation (Dkt. 136) should be and is hereby ACCEPTED. Thus, Plaintiff's objections to

---

[6] Although Plaintiff appears to have attached discovery materials to some of his motions (*see, e.g.*, Dkt. 87, Attach. 1; Dkt. 98, Attach. 2–4), the Court has confined its analysis to the text of the pleadings themselves. The only opportunity the parties may have had to introduce other non-pleading evidence was the October 26, 2018 motions hearing before Magistrate Judge Kazen, at which the parties presented argument on various discovery motions as well as Ramos's motion to dismiss. However, the Court has not reviewed the transcript of that hearing and remains unaware of any extraneous evidence the parties may have discussed there.

the Report and Recommendation (Dkt. 139) are OVERRULED. Defendant Ramos's motion to dismiss (Dkt. 81) is GRANTED, and Ramos is TERMINATED as a defendant in this case.

IT IS SO ORDERED.

SIGNED this 21st day of February, 2019.

_____
Diana Saldaña
United States District Judge